*Estate of Edward James Waters v. Pierre Kory, M.D.*

Defendant's Notice of Removal

# Exhibit 2

**Complaint**

RETURN DATE: MAY 7, 2024 :: SUPERIOR COURT

EDWARD WATERS, JR., :: JUDICIAL DISTRICT OF
ADMINISTRATOR OF THE ESTATE OF
EDWARD JAMES WATERS :: STAMFORD/NORWALK

V. :: AT STAMFORD

PIERRE KORY, M.D. :: MARCH 29, 2024

## COMPLAINT

### GENERAL ALLEGATIONS

1. The plaintiff, **Edward Waters, Jr.**, named Administrator of the Estate of Edward James Waters by Decree of the Darien-New Canaan Probate Court, herein acting in that capacity, brings this action pursuant to Connecticut General Statutes § 52-555 to recover all damages to which the Estate is legally entitled under said Statute, including but not limited to both economic and non-economic.

2. At all relevant times, the decedent of the plaintiff, **Edward James Waters** (hereinafter referred to as "Mr. Waters") was a resident of Wilton, Connecticut, who was aggrieved by the medical care he received as set forth in this Complaint.

3. At all relevant times, the defendant, **Pierre Kory, M.D.**, was a medical doctor who held himself out to the general public as being ready, willing, and able to provide medical treatment to patients.

4. At all relevant times, Dr. Kory was serving as Mr. Waters's physician.

5. At all relevant times, Dr. Kory provided medical care to Mr. Waters, from approximately December 5, 2021, through January 12, 2022.

6. Dr. Kory was responsible for the personal care, safety, and wellbeing of his patients, including the plaintiff's decedent, Mr. Waters.

LAW OFFICE OF AUSTIN B. JOHNS, LLC
36 RUSS STREET, HARTFORD, CONN. 06106
T. (860) 785-6225  F. (860) 785-6733  JURIS NO. 437919

1

7. Dr. Kory owed a duty to possess and apply the knowledge, skill and care which was ordinarily used by such reasonably well-qualified doctors in similar cases and under similar circumstances, and this duty was owed to Mr. Waters.

8. Pursuant to Connecticut General Statutes § 52-190a(b), a Petition for Automatic 90-Day Extension of Statute of Limitations was filed with, and granted by the Middletown Superior Court Clerk on June 22, 2023. Exhibit A.

**COUNT I: NEGLIGENCE**

1-8. Paragraphs 1-8 of the General Allegations are hereby incorporated as Paragraphs 1-8 of Count I, as if set forth fully herein.

9. On or about Thanksgiving Day, 11/25/21, Mr. Waters was apparently exposed to COVID-19, and tested positive himself thereafter.

10. Mr. Waters or his family reached out to Dr. Kory, who established care on 12/5/21.

11. On 12/6/21 Dr. Kory prescribed Mr. Waters ivermectin 3 milligrams 14 tablets daily for five days, prednisone 20 milligrams three daily for five days, spironolactone 100 milligrams one twice a day for 10 days and dutasteride 0.5 milligrams to daily for 10 days.

12. On 12/12/21 Mr. Waters presented to Stamford emergency department with increasing shortness of breath. He reported that he was unvaccinated, had found himself to be COVID positive shortly after Thanksgiving, and was on ivermectin. Decreasing oxygen saturations at home prompted presentation, as he desired monoclonal antibody therapy. He did not receive this, and his severity of illness did not qualify for remdesivir or Decadron at the time of admission, though this therapy was initiated on hospital day 2 when he qualified.

2

LAW OFFICE OF AUSTIN B. JOHNS, LLC
36 RUSS STREET, HARTFORD, CONN. 06106
T. (860) 785-6225  F. (860) 785-6733  JURIS NO. 437919

13. Mr. Waters was hospitalized from 12/12/21-12/16/21 and was discharged in stable condition with home oxygen. Of note, he was prescribed 6 days of omeprazole, intended to be taken until he ended his course of Decadron. Ivermectin was not prescribed during his hospitalization and it was listed as discontinued upon hospital discharge.

14. On 12/18/21, Dr. Kory recommended that once Mr. Waters completed his Decadron course, he should take Prednisone 20 milligrams three daily for five days, two daily for five days and then one daily for five days.

15. Dr. Kory did not personally review Mr. Waters's hospital course, imaging or discharge summary.

16. On 12/29/21 Mr. Waters's daughter called Dr. Kory reporting worsening abdominal pain beginning 2 days prior, and was currently on 40 milligrams of Prednisone for three more days; Dr. Kory's plan was to reduce Prednisone to 20 milligrams for 2 days.

17. On 12/30/21, Mr. Waters was brought by ambulance to Norwalk Hospital emergency department, with worsening conditions.

18. On said date, Mr. Waters was taken for emergency exploratory laparotomy, and a 2cm perforated duodenal ulcer was found and repaired.

19. Despite the efforts of the Norwalk Hospital medical staff, Mr. Waters's condition continued to decline due to the perforated ulcer.

20. Mr. Waters passed away on 1/12/22 as a result of multiple organ failure.

21. Mr. Waters sustained the above-described injuries and damages as a direct and proximate result of Dr. Kory's negligence, and his disregard of his aforesaid duty, in that:

    a. Dr. Kory did not see his patient, Mr. Waters, in person, or physically evaluate him at any time;

3

LAW OFFICE OF AUSTIN B. JOHNS, LLC
36 RUSS STREET, HARTFORD, CONN. 06106
T. (860) 785-6225  F. (860) 785-6733  JURIS NO. 437919

b. Dr. Kory was not licensed to practice medicine in Connecticut, and should not have prescribed medications to the plaintiff in Connecticut;

c. Dr. Kory prescribed an unreasonably high dose of Prednisone, and did so without proper consideration for gastrointestinal protection;

d. Dr. Kory failed to properly inform Mr. Waters of the risks associated with the doctor's prescribed course of treatment;

e. Dr. Kory failed to properly manage Mr. Waters's healthcare and his known medical conditions;

f. Dr. Kory failed to ensure timely, accurate, and comprehensive assessments were performed in response to Mr. Waters's change of condition;

g. Dr. Kory failed to ensure a person-centered, comprehensive care plan was in place for Mr. Waters, with appropriate interventions to address risks;

h. Dr. Kory failed to exercise that degree of skill and care normally exercised by a medical doctor in the assessment, evaluation, and treatment of a patient with similar conditions as those identified in Mr. Waters;

i. Dr. Kory failed to maintain an accurate medical record for Mr. Waters; and,

j. Dr. Kory failed to always ensure Mr. Goetz's safety and wellbeing, and to protect him from harm.

4

LAW OFFICE OF AUSTIN B. JOHNS, LLC
36 RUSS STREET, HARTFORD, CONN. 06106
T. (860) 785-6225  F. (860) 785-6733  JURIS No. 437919

22. As a direct and proximate result of Dr. Kory's negligence and carelessness, Mr. Waters suffered injuries, harms and losses, including, but not limited to: physical pain, emotional distress, and death. In addition, Mr. Waters lost the ability and enjoyment associated with carrying on life's activities, and suffered economic losses including medical expenses and funeral and/or burial expenses.

**COUNT II: VIOLATION OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT**

1-22. Paragraphs 1 through 22 of Count I are hereby made corresponding Paragraphs 1 through 22 of Count II by reference as if set forth fully herein.

23. At all times relevant hereto, the defendant's conduct was undertaken in the course of its primary trade or business within the meaning of Connecticut General Statutes §§ 42-110b et seq., the Connecticut Unfair Trade Practices Act ("CUTPA").

24. The plaintiff is a consumer of the defendant's medical services.

25. The defendant's conduct constitutes unfair or deceptive acts or practices prohibited by CUTPA in that it offends the public policy of the State of Connecticut and the United States.

26. The defendant's conduct constitutes unfair or deceptive acts or practices prohibited by CUTPA in that it is immoral, unfair, unscrupulous, oppressive and unethical, particularly in light of the relationship of trust between a doctor and patient, because its conduct was malicious.

27. The defendant's conduct constitutes unfair or deceptive acts or practices prohibited by CUTPA in that it caused substantial injury to the plaintiff as a consumer of the defendant's services, which injury the plaintiff could not reasonably have avoided under the

LAW OFFICE OF AUSTIN B. JOHNS, LLC
36 RUSS STREET, HARTFORD, CONN. 06106
T. (860) 785-6225  F. (860) 785-6733  JURIS NO. 437919

circumstances, and which injury was not outweighed by any countervailing consumer or competitive benefits.

28. As a result of the defendant's unfair or deceptive acts or practices, the plaintiff suffered ascertainable loss and economic harm.

29. As a result of the defendant's unfair or deceptive acts or practices, the plaintiff is entitled to economic damages, statutory attorney's fees pursuant to C.G.S. § 42a-110g(d), and punitive damages pursuant to C.G.S. § 42a-110g(a).

6

LAW OFFICE OF AUSTIN B. JOHNS, LLC
36 RUSS STREET, HARTFORD, CONN. 06106
T. (860) 785-6225  F. (860) 785-6733  JURIS NO. 437919

WHEREFORE, the Plaintiff claims:

1. Monetary damages, within the jurisdiction of the Court;
2. Attorney's fees pursuant to CUTPA § 42a-110g(d);
3. Punitive damages pursuant to CUTPA § 42a-110g(a);
4. Allowable costs; and,
5. Such other relief as law and equity may provide.

THE PLAINTIFF
EDWARD WATERS, JR., ADMINISTRATOR OF
THE ESTATE OF EDWARD JAMES WATERS

By: *[signature]*
Austin Berescik-Johns
Law Office of Austin B. Johns
His Attorney

ATTEST:
BRIAN R. WRIGHT
STATE MARSHAL
HARTFORD COUNTY

7

LAW OFFICE OF AUSTIN B. JOHNS, LLC
36 RUSS STREET, HARTFORD, CONN. 06106
T. (860) 785-6225  F. (860) 785-6733  JURIS NO. 437919

| | | |
|---|---|---|
| RETURN DATE: MAY 7, 2024 | :: | SUPERIOR COURT |
| EDWARD WATERS, JR., ADMINISTRATOR OF THE ESTATE OF EDWARD JAMES WATERS | :: :: | JUDICIAL DISTRICT OF STAMFORD/NORWALK |
| V. | :: | AT STAMFORD |
| PIERRE KORY, M.D. | :: | MARCH 29, 2024 |

## STATEMENT OF AMOUNT IN DEMAND

The amount in demand is greater than Fifteen Thousand Dollars ($15,000.00), exclusive of interest and costs.

THE PLAINTIFF
EDWARD WATERS, JR., ADMINISTRATOR OF
THE ESTATE OF EDWARD JAMES WATERS

By: _____
Austin Berescik-Johns
Law Office of Austin B. Johns
His Attorney

ATTEST:
BRIAN J. WRIGHT
STATE MARSHAL
HARTFORD COUNTY

8

LAW OFFICE OF AUSTIN B. JOHNS, LLC
36 RUSS STREET, HARTFORD, CONN. 06106
T. (860) 785-6225  F. (860) 785-6733  JURIS No. 437919

| | | |
|---|---|---|
| RETURN DATE: MAY 7, 2024 | :: | SUPERIOR COURT |
| EDWARD WATERS, JR., ADMINISTRATOR OF THE ESTATE OF EDWARD JAMES WATERS | :: :: | JUDICIAL DISTRICT OF STAMFORD/NORWALK |
| V. | :: | AT STAMFORD |
| PIERRE KORY, M.D. | :: | MARCH 29, 2024 |

## CERTIFICATION

Pursuant to Connecticut General Statutes § 52-190a, the undersigned hereby certifies that he made a reasonable inquiry to determine that there are grounds for a good faith belief there has been negligence in the medical care and treatment of Edward James Waters. Said good faith belief is supported by the following redacted medical report, which is attached as Exhibit B.

THE PLAINTIFF
EDWARD WATERS, JR., ADMINISTRATOR OF
THE ESTATE OF EDWARD JAMES WATERS

By: _____
Austin Berescik-Johns
Law Office of Austin B. Johns
His Attorney

ATTEST:
BRIAN R. WRIGHT
STATE MARSHAL
HARTFORD COUNTY

LAW OFFICE OF AUSTIN B. JOHNS, LLC
36 RUSS STREET, HARTFORD, CONN. 06106
T. (860) 785-6225   F. (860) 785-6733   JURIS NO. 437919

Exhibit A

|  |  |
|---|---|
| EDWARD J. WATERS, JR., ADMINISTRATOR OF THE ESTATE OF EDWARD J. WATERS | : SUPERIOR COURT<br>:<br>: J.D. OF MIDDLETOWN<br>: |
| V. | : AT MIDDLETOWN<br>: |
| PHILIP E. NEGUS, M.D., ET AL | : JUNE 22, 2023 |

### PETITION PURSUANT TO C.G.S. § 52-190a(b)

Petitioner, Edward J. Waters, Jr., Administrator of the Estate of Edward J. Waters, respectfully petitions the Clerk of the Superior Court for the Judicial District of Middletown at Middletown, pursuant to General Statutes §52-190a(b), for a ninety (90) day extension of the statute of limitations to permit a reasonable inquiry to determine in good faith whether grounds exist for an action for a medical malpractice claim against one or more of the following: James E. Negus, M.D., Stamford Health Medical Group, Stamford Hospital a/k/a Stamford Health, Inc., and Pierre Kory, M.D., and any other physicians, physicians' assistants, nurses, physical therapists, healthcare personnel, professional corporations, entities, medical institutions, hospitals, facilities, and/or persons who may have been involved in the medical care and treatment of Edward J. Waters.

The statute of limitations has not yet run on this claim.

THE PETITIONER
EDWARD J. WATERS, JR.,
ADMINISTRATOR OF THE ESTATE OF
EDWARD J. WATERS

Jonathan A. Kocienda, Esq.
Connecticut Trial Firm, LLC
437 Naubuc Avenue
Suite 107
Glastonbury, CT 06033
Tel: (860) 471-8333
Fax: (860) 471-8332
Juris No. 414585

Office of the Clerk
Superior Court
RECEIVED

JUN 22 2023

Judicial District of Middlesex
State of Connecticut

-1-

**CONNECTICUT TRIAL FIRM, LLC**
437 Naubuc Avenue, Suite 107, Glastonbury, CT 06033 • 860.471.8333 • Facsimile: 860.471.8332
Juris No. 436558

## ORDER AND NOTICE TO COUNSEL

Your petition for extension of the statute of limitations has been automatically granted in accordance with, and to the extent provided for by, C.G.S. § 52-190a(b).

A copy of the petition will be maintained by the Clerk's Office for a period of six months from the date it was granted. A civil entry fee will be collected at the time the writ, summons and complaint are filed with the clerk's office, if and when you bring suit.

Please remember to include the original petition with your writ summons and complaint when you return them to court!

Original of petition and this
notice returned to counsel on:

June 22, 2023

CARRIE DUNN
Assistant Clerk
*Superior Court for the Judicial District of Middlesex*

Rev. 7-23-2019

Exhibit B

**Declaration regarding Waters v. Kory**

I, ▆▆▆▆▆▆▆▆, MD, make the following statements based upon my review of the materials provided to me and upon personal knowledge:

I am an internal medicine, pulmonary and critical care specialist at Swedish Medical Center in Seattle, where I have worked since 1990. I am Board Certified in Internal Medicine, Pulmonary Disease, and Critical Care Medicine. I have served as Medical Director of Critical Care and teleICU for Swedish Health Services, and as Chief of Staff at Swedish Medical Center. I obtained my medical degree from the Medical College of Georgia, and thereafter completed an internship and residency in Internal Medicine at the University of Washington, followed by a fellowship in Pulmonary and Critical Care Medicine at the University of Alabama at Birmingham, where I subsequently remained on faculty for several years prior to returning to Seattle and entering private practice. My curriculum vitae is attached for reference to my additional qualifications as well as my publications. As a result of my education, training and over 40 years of clinical experience, I very extremely familiar with the medical issues present in this case.

All of my conclusions set forth in this declaration are made on a more probable than not basis to a reasonable degree of medical certainty unless otherwise stated. These conclusions are based upon my review of the materials listed below as well as my education, training and experience, and are intended only as a limited summary of some of my opinions in this case. I also reserve the right to reassess my opinions based upon reviewing additional information.

**Materials Reviewed:** Norwalk Hospital records; Kory, MD records; Negus, MD Records, Labs, Reports and Telephone encounters; Green, MD records; CVS Pharmacy records; Wilton Fire Department records; Wilton Ambulance records and Stamford Hospital records.

**Clinical Summary:**

Edward Waters was an independently living 80 year old man with recent COVID-19 (admitted to Stamford Hospital 12/12-16), coronary disease status post remote CABG, atrial fibrillation, possible paroxysmal supraventricular tachycardia, obesity, hyperlipidemia, bilateral non occlusive renal calculi, myelodysplastic syndrome, dysfibrinogenemia and diverticulitis, with his only known medications to be metoprolol and Eliquis. On 12/30/21 the fire department responded to a call at 1348 from his daughter Tricia, saying that he had altered mental status for the past couple of days and that today, she found him complaining of severe abdominal pain; he was noted to have had worsening lower abdominal pain since Christmas, and had developed nausea without vomiting at home that morning. Paramedics from the Wilton Volunteer Ambulance Corps arrived at 1401, and at that time learned that he had had two days of abdominal distension, and markedly worse abdominal pain that day; his vital signs revealed temperature of 93°F measured temporally, a heart rate of 100, blood pressure 90/60, respirations 20 and a room air oxygen saturation of 89%. Synchronized cardioversion was attempted in hopes of improving his blood pressure, but he only had atrial fibrillation with rapid ventricular response following that. He was transported to Norwalk hospital, arriving to that emergency department at 1456. There, his heart rate was 97, blood pressure 85/68, with respiratory rate of 25, and he was noted to be mildly confused with normal bowel sounds, but also had diffuse, exquisite tenderness of his abdomen with guarding. Laboratories were remarkable for an hematocrit of 60.3, sodium 134, bicarbonate 17 with anion gap 21, BUN 21 with creatinine 1.84, glucose 185, a high sensitivity troponin of 129 and lactic acid 8.7; he also remained positive for COVID-19. Two large bore IV's were placed, volume resuscitation was initiated with

lactated ringers, and after three liters with persistent hypotension, a fourth liter was begun and norepinephrine was initiated. Antibiotics (cefepime and vancomycin) were urgently begun, and subsequent CT scan revealed a large pneumoperitoneum as well as ascites and air surrounding the liver, consistent with perforated bowel; infiltration of the fat at the junction of the descending colon and small bowel with thickening of adjacent fascia suggested diverticulitis. Chest X-ray revealed bilateral air space disease compatible with COVID-19 infection. At 1646 was admitted to an ICU bed, anticipating urgent surgery. It was noted that he did not meet criteria for reversal of his Eliquis.

He was taken for emergency exploratory laparotomy, and a 2cm perforated duodenal ulcer was found and repaired; the diffusely soiled abdominal cavity was irrigated and washed out, with two JP drains remaining in place; he subsequently grew alpha Streptococcus from his wound and peritoneal fluid cultures so Cefepime was transitioned to ceftriaxone. Postoperatively he was transferred to the intensive care unit intubated, supported by norepinephrine at 17 and vasopressin 0.04. Remdesivir was initiated with a planned five day course but this was discontinued after one day due to rising liver function tests, and hydrocortisone 100 milligrams IV three times daily was continued; it was noted that there was a question as to whether or not he was on steroids as an outpatient, and providers got conflicting reports from his family, thus the hydrocortisone was prescribed. Metronidazole was added to his antibiotic regimen, and a Protonix drip was begun.

Due to his oliguric renal failure, a hemodialysis catheter was placed and dialysis initiated on 1/1/22. On 1/4/22 he had a TTE revealing left ventricular ejection fraction 55- 65%, he was extubated, and pressors were weaned. On the morning of 1/5 and he transferred to the medical floor. It was noted that he had decreased responsiveness/alertness/arousal and was without vocalization since extubation; CT scan of the brain on 1/5 revealed a large area of hypoattenuation in the area of the right cerebellum, reflecting a large stroke; there was slight progression on a follow up scan from 1/6. On 1/7 he began to deteriorate with low oxygen saturations despite a Venti mask 50%, and decreased mean arterial blood pressure. He was found to have severe hypercarbic respiratory failure, and was re-intubated for acute hypercarbic respiratory failure. He again required vasopressor support via a central line placed that day. Several of his family members were unvaccinated and thus not allowed to visit, and family requested daily COVID retesting. Concern was expressed regarding his prognosis given stuttering events over the prior month including COVID, acutely perforated duodenal ulcer with associated severe shock and respiratory failure and acute kidney injury requiring dialysis; his health care team was working with his family on overall goals of care. During a discussion with palliative care on 1/6, his very poor prognosis was outlined to his loved ones, and daughter Trish stated that, in discussions with her father in the past he would not want heroic measures knowing his condition and unlikely recoverability, and certainly would not want any prolonged artificial life support. On 1/11, due to his worsened pressor dependent shock, severe metabolic acidosis, FIO2 up to 100%, arrangements were made for each of the six children and the wife to come in for brief "extenuating circumstance" visits the following day.

Due to progressive deterioration, family was brought in in the middle of the night and he was made comfort measures only. He expired on 1/12/22 at 0021; no autopsy was performed.

**Care Provided by Dr. Pierre Kory:**

Mr. Waters was apparently exposed to COVID on Thanksgiving, and tested positive himself thereafter. He or his family reached out to Dr. Kory. On 12/6/21 he was prescribed ivermectin 3 milligrams 14 tablets

daily for five days, prednisone 20 milligrams three daily for five days, spironolactone 100 milligrams one twice a day for 10 days and dutasteride 0.5 milligrams to daily for 10 days by Dr. Kory.

On 12/12/21 he presented to Stamford emergency department with increasing shortness of breath. He reported that he was unvaccinated, had found himself to be COVID positive shortly after Thanksgiving, and was on ivermectin. Decreasing oxygen saturations at home prompted presentation, as he desired monoclonal antibody therapy. He did not receive this, and his severity of illness did not qualify for remdesivir or Decadron at the time of admission, though this therapy was initiated on hospital day 2 when he qualified. He was hospitalized from 12/12-16 and was discharged in stable condition with home oxygen. Of note, he was prescribed 6 days of omeprazole, intended to be taken until he ended his course of Decadron. Ivermectin was not prescribed during his hospitalization and it was listed as discontinued upon hospital discharge.

On 12/18/21, Dr. Kory recommended that once Mr. Waters completed his Decadron course, he should take Prednisone 20 milligrams three daily for five days, two daily for five days and then one daily for five days. Of note, Dr. Kory did not personally review Mr. Waters hospital course, imaging or discharge summary.

On 12/29/21 his daughter called Kory reporting worsening abdominal pain beginning 2 days prior, and was currently on 40 milligrams of Prednisone for three more days; his plan was to reduce Prednisone to 20 milligrams for 2 days. This was obviously an inadequate response to a serious health condition, compounded by the fact that Dr. Kory never followed up thereafter.

**Conclusion:**

This 80 year old man was prescribed high dose Prednisone for over 3 weeks by Dr. Pierre Kory a physician not licensed to practice in the state of Connecticut. Dr. Kory's note of 12/5/21 suggests that the patient was not actually seen, as the history seems to have been provided by one of his daughters, and there is no evidence of Dr. Kory communicating with Mr. Waters' primary care physician Dr. Negus regarding the treatments he was rendering. While it is noted that his medications were reviewed with his daughter, it is not clear that Kory was aware of his ibuprofen therapy, and in any event, no acid reducing agent was prescribed to this elderly man during a protracted course of high dose Prednisone; upon learning that he was having abdominal pain on 12/29 he simply recommended a reduction in Prednisone dosage and did not consider the well known propensity of corticosteroids to cause GI problems such as ulcer. As we now know, his abdominal pain was due to a large duodenal ulcer which ultimately perforated, leading to his terminal hospitalization during which he developed multiple organ system failure and died despite all efforts of the health care team.

As a reasonable and prudent physician, Dr. Kory knew, or should have known, that glucocorticoids increase the risk for adverse gastrointestinal effects, such as gastritis, ulcer formation and GI bleeding. By prescribing high dose corticosteroids to this elderly man without consideration of GI protection, Dr. Kory violated the standard of care to a reasonable degree of medical certainty, by causing a large duodenal ulcer which ultimately led to Mr. Waters' untimely death. Further, the combination of glucocorticoids and non-steroidal anti-inflammatory drugs such as Advil results in a synergistic increase in the incidence of gastrointestinal events, four times the risk from either agent alone. The death of Edward Waters is particularly tragic in light of the fact that the WHO published COVID treatment guidelines in early 2020

that specifically recommended against using corticosteroids for treatment of those with non-severe COVID, and multiple studies since have confirmed that risks outweigh benefits in such use.

Respectfully submitted,