# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

EDWARD WATERS, JR.,
ADMINISTRATOR OF THE ESTATE OF
EDWARD JAMES WATERS,

                    Plaintiff,

        v.

PIERRE KORY, M.D.,

                    Defendant.

**Case No. 3:24-CV-00858 (KAD)**

**May 15, 2024**

## DEFENDANT'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS

Steven M. Warshawsky, Esq.
The Warshawsky Law Firm

Cameron Atkinson, Esq.
Atkinson Law, LLC

*Attorneys for Defendant*

# TABLE OF CONTENTS

TABLE OF CONTENTS..............................................................................................................1

TABLE OF AUTHORITIES .....................................................................................................2

PRELIMINARY STATEMENT ................................................................................................4

STANDARD OF REVIEW ........................................................................................................5

STATEMENT OF FACTS .........................................................................................................5

THE FEDERAL PREP ACT......................................................................................................7

    A.    Statutory Background.................................................................................................7

    B.    PREP Act Immunity ..................................................................................................8

ARGUMENT..............................................................................................................................10

    1.    Dr. Kory is a "covered person" under the PREP Act ...............................................10

    2.    Dr. Kory prescribed "covered countermeasures" to Mr. Waters ..............................12

    3.    Plaintiff alleges a causal relationship between Mr. Waters'
        claim for loss and his use of the covered countermeasures......................................13

    4.    Dr. Kory is entitled to PREP Act immunity "from suit and liability"
        for his treatment of Mr. Waters for COVID-19 ........................................................14

    5.    Plaintiff's CUTPA claim must be dismissed with prejudice
        because CUTPA does not apply to medical malpractice ..........................................14

CONCLUSION ..........................................................................................................................15

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ........................................................................... 5

*Bell Atlantic Corp. v. Twombley*, 550 U.S. 544 (2007) ..................................................... 5

*Brass v. Am. Film Techs., Inc.*, 987 F.2d 142 (2d Cir. 1993) ............................................ 5

*Cannon v. Watermark Retirement Communities, Inc.*, 45 F.4th 137 (D.C. Cir. 2022) ......... 7,8

*Estate of Maglioli v. Alliance HC holdings LLC*, 16 F.4th 393 (3d Cir. 2021) ....................... 8

*Hampton v. California*, 83 F.4th 754 (9th Cir. 2023) ......................................................... 12

*Haynes v. Yale-New Haven Hosp.*, 242 Conn. 17, 699 A.2d 964 (1997) .............................. 14

*Hudak v. Elmcroft of Sagamore Hills*, 58 F.4th 845 (6th Cir. 2023) .................................... 9

*Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692 (2d Cir. 2010) ............................... 5

*Mercer v. Schriro*, 337 F. Supp.3d 109 (D. Conn. 2018) .................................................... 5

*Pratt v. JACC Healthcare Center of Norwich LLC*, No. 3:22-cv-566 (VAB),
      2022 WL16855976 (D. Conn. Nov. 10, 2022) .......................................................... 10

*Solomon v. St. Joseph Hosp.*, 62 F.4th 54 (2d Cir. 2023) ...................................... 8,10,11,12

## Statutes, Regulations, and Rules

42 U.S.C. § 247d-6d .......................................................................................................... 7

42 U.S.C. § 247d-6d(a)(1) ............................................................................................. 8.10,14

42 U.S.C. § 247d-6d(a)(2)(A) ............................................................................................. 9

42 U.S.C. § 247d-6d(a)(2)(B) ................................................................................... 9,12,13,14

42 U.S.C. § 247d-6d(b)(1) .................................................................................................. 8

42 U.S.C. § 247d-6d(b)(8)(A) ............................................................................................ 10

42 U.S.C. § 247d-6d(c) ...................................................................................................... 9

42 U.S.C. § 247d-6d(c)(1)(B) ............................................................................................. 9

42 U.S.C. § 247d-6d(d)(1) ............................................................9

42 U.S.C. § 247d-6d(e)(1) ............................................................9

42 U.S.C. § 247d-6d(i)(1) .............................................................8

42 U.S.C. § 247d-6d(i)(2)(B)(iv) ...............................................11

42 U.S.C. § 247d-6d(i)(8)(A) ......................................................11

42 U.S.C. § 247d-6e ......................................................................7

42 U.S.C. § 247d-6e(a) ............................................................9,10

42 U.S.C. § 247d-6e(d)(1) ............................................................9

88 Fed. Reg. 30769 (May 12, 2023) ...........................................8

85 Fed. Reg. 15198 (Mar. 17, 2020) .....................................8,12

Conn. Gen. Stat. § 20-9(b)(5) ....................................................11

Fed. R. Civ. P. 12(b)(6) ...........................................................4,5

## PRELIMINARY STATEMENT

Defendant Pierre Kory, M.D., through his undersigned counsel, respectfully submits this memorandum of law in support of Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), and states as follows:

This is a wrongful death action initiated on or about March 29, 2024, in the Superior Court of the State of Connecticut, Judicial District of Stamford/Norwalk, and removed to this Court pursuant to 28 U.S.C. §§ 1441, 1446 on May 12, 2024.

The claims in this case arise from Defendant's medical treatment of Plaintiff's decedent for COVID-19 in December 2021. Specifically, Plaintiff alleges that, as a result of medicines prescribed by Defendant to treat the decedent's COVID-19, the decedent developed a large duodenal ulcer, which perforated and caused his death. In the Complaint, Plaintiff asserts causes of action against Defendant for negligence (Count I) and violation of the Connecticut Unfair Trade Practices Act (CUTPA) (Count II). Defendant denies any wrongdoing in this case.

As demonstrated herein, the Complaint must be dismissed in its entirety, because Defendant is entitled to immunity "from suit and liability" under the federal PREP Act, which immunizes a "covered person" from "all claims for loss" relating to an individual's use of "any . . . drug . . . used to treat, diagnose, cure, prevent, or mitigate COVID-19." Plaintiff's claims against Defendant fall squarely within the scope of the PREP Act and, therefore, are barred as a matter of law. In addition, Plaintiff's CUTPA claim must be dismissed for the independent reason that CUTPA does not apply to claims of professional negligence, including medical malpractice.

Wherefore, Defendant respectfully moves this Court, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss Count I and Count II of the Complaint with prejudice.

## STANDARD OF REVIEW

To survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678. Nevertheless, when reviewing a motion to dismiss, the court must accept well-pleaded factual allegations as true and draw "all reasonable inferences in the non-movant's favor." *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010). When reviewing a Rule 12(b)(6) motion to dismiss, the Court is limited to the allegations in the Complaint, taken as true, and to documents attached to, incorporated by or otherwise integral to the Plaintiff's complaint. *See Mercer v. Schriro*, 337 F. Supp.3d 109, 134 (D. Conn. 2018); *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

## STATEMENT OF FACTS

Plaintiff's Complaint dated March 29, 2024 (ECF Doc. 2), including the attached Physician Declaration (Exhibit B to Complaint), provides a detailed chronology of the events in this case. For purposes of the present motion, the essential facts are as follows:

Plaintiff's decedent, Edward James Waters, contracted COVID-19 on or about Thanksgiving Day, November 25, 2021. Compl. ¶ 9. Mr. Waters was an independently

living 80-year-old man. Physician Decl. at 1. Thereafter, Mr. Waters or his family reached out to Dr. Kory,[1] who started treating Mr. Waters for COVID-19 on December 5, 2021. Compl. ¶ 10. Dr. Kory's treatment regimen for Mr. Waters included ivermectin, prednisone, spironolactone, and dutasteride, which he prescribed on December 6, 2021. *Id.* ¶ 11. *See also* Kory Declaration ¶¶ 7-12.

On December 12, 2021, Mr. Waters presented to the Stamford emergency department with increasing shortness of breath. Compl. ¶ 12. Mr. Waters was hospitalized from December 12-16, 2021, and was discharged in stable condition. *Id.* ¶ 13.

On December 18, 2021, Dr. Kory recommended that Mr. Waters resume taking a tapered course of prednisone, following the completion of the Decadron course he was prescribed at the hospital. *Id.* ¶ 14. On December 29, 2021, Mr. Waters' daughter called Dr. Kory and reported that Mr. Waters was experiencing worsening abdominal pain beginning two days prior. *Id.* ¶ 16.

On December 30, 2021, Mr. Waters was brought by ambulance to Norwalk Hospital emergency department with worsening conditions, and the same day underwent an emergency exploratory laparotomy that found and repaired a 2cm perforated duodenal ulcer. *Id.* ¶ 18. At the hospital, Mr. Waters tested positive for COVID-19, and his chest x-ray revealed air space disease compatible with COVID-19 infection. Physician Decl. at 2. Mr. Waters remained hospitalized and his condition continued to decline due to the perforated ulcer. Compl. ¶ 19. Mr. Waters died on January 12, 2022, as a result of multiple organ failure. *Id.* ¶ 20.

---

[1] Dr. Kory is a world-renowned expert in the treatment of COVID-19 who has testifed on multiple occasions before Congress. He is co-founder of the Front Line COVID-19 Critical Care Alliance (FLCCC) and the author of *The War on Ivermectin: The Medicine that Saved Millions and Could Have Ended the Pandemic* (Skyhorse Publishing 2023).

Plaintiff alleges that "Mr. Waters sustained the above-described injuries and damages as a direct and proximate result of Dr. Kory's negligence . . . ." *Id.* ¶ 21. Plaintiff's expert declaration faults the quality of care that Dr. Kory provided Mr. Waters while treating him for COVID-19, in particular "[b]y prescribing high dose corticosteroids to this elderly man without consideration of GI protection . . . causing a large duodenal ulcer which ultimately led to Mr. Waters' untimely death." Physician Decl. at 3.[2]

In sum, Plaintiff's Complaint alleges that Mr. Waters had COVID-19, that he or his family engaged Dr. Kory to treat Mr. Waters for his COVID-19, and that Dr. Kory's treatment of Mr. Waters involved the use of high dose corticosteroids, which caused Mr. Waters to suffer a large duodenal ulcer that ultimately caused his death.

Because Plaintiff's claims for negligence, injury, and death arise, relate, and result from Dr. Kory's treatment of Mr. Waters for COVID-19, Dr. Kory is immune from civil liability and these claims are barred by the federal PREP Act.

## THE FEDERAL PREP ACT

### A.    Statutory Background:

The Public Readiness and Emergency Preparedness Act ("PREP Act") is codified at 42 U.S.C. §§ 247d-6d and 247d-6e. "Congress enacted the PREP Act in 2005 '[t]o encourage the expeditious development and deployment of medical countermeasures during a public health emergency' by allowing the HHS Secretary 'to limit legal liability for losses relating to the administration of medical countermeasures such as diagnostics, treatments, and vaccines.'" *Cannon v. Watermark Retirement Communities, Inc.*, 45 F.4th 137, 139 (D.C. Cir. 2022) (citations omitted). The PREP Act "provides for immunity from federal and state

---

[2] For purposes of the present motion Defendant must accept as true the allegations in the Complaint, but Dr. Kory denies that he committed any medical malpractice in his treatment of Mr. Waters. *See* Kory Declaration ¶ 13.

law claims relating to the administration of certain medical countermeasures during a declared public health emergency." *Id.* at 138. "The Act lies dormant until invoked by the Secretary of the Department of Health and Human Services ('HHS')." *Estate of Maglioli v. Alliance HC holdings LLC*, 16 F.4th 393, 400 (3d Cir. 2021).

Pursuant to his authority under the PREP Act, *see* 42 U.S.C. § 247d-6d(b)(1), in a declaration effective February 4, 2020, the HHS Secretary declared COVID-19 "a public health emergency" and recommended "the manufacture, testing, development, distribution, administration, and use of the Covered Countermeasures." 85 Fed. Reg. 15198, 15201 (Mar. 17, 2020). In the declaration, the Secretary defined "Covered Countermeasures," in relevant part, as "any antiviral, any other drug, any biologic, any diagnostic, any other device, or any vaccine used to treat, diagnose, cure, prevent, or mitigate COVID-19 . . . ." *Id.* at 15202 (Section VI); *see also* 42 U.S.C. § 247d-6d(i)(1) (defining "covered countermeasure"); *Solomon v. St. Joseph Hosp.*, 62 F.4th 54, 58 (2d Cir. 2023) (describing events). The Secretary expressly invoked the "[l]iability immunity as prescribed in the PREP Act and conditions stated in this Declaration." *Id.* at 15201. The liability immunity has been extended to December 31, 2024. *See* 88 Fed. Reg. 30769, 30775-76 (May 12, 2023).[3]

### B. PREP Act Immunity:

The PREP Act generally provides:

> Subject to the other provisions of this section, **a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure** if a declaration under subsection (b) has been issued with respect to such countermeasure. 42 U.S.C. § 247d-6d(a)(1) (bold added).

---

[3] For the Court's convenience, copies of 42 U.S.C. § 247d-6d and the HHS Secretary's COVID-19 declaration, 85 Fed. Reg. 15198 (Mar. 17, 2000), are appended hereto.

The general immunity provision set forth in § 6d(a)(1) is further defined in § 6d(a)(2)(B) (titled "Scope"):

> The immunity under paragraph (1) applies **to any claim for loss that has a causal relationship with the administration to or use by an individual of a covered countermeasure**, including a causal relationship with the design, development, clinical testing or investigation, manufacture, labeling, distribution, formulation, packaging, marketing, promotion, sale, purchase, donation, dispensing, prescribing, administration, licensing, or use of such countermeasure. 42 U.S.C. § 247d-6d(a)(2)(B) (bold added).

Thus, "[t]he Act provides immunity only from 'any claim for loss that has a causal relationship with the administration to or use by an individual of a covered countermeasure[.]'" *Hudak v. Elmcroft of Sagamore Hills*, 58 F.4th 845, 849 (6th Cir. 2023). The PREP Act defines "loss" to encompass "any type of loss," including death; physicial, mental, or emotional injury, illness, disability, or condition; and loss or damage to property. 42 U.S.C. § 247d-6d(a)(2)(A).

The "sole exception" to immunity under the PREP Act is an "exclusive Federal cause of action against a covered person for death or serious physical injury proximately caused by willful misconduct" that can be "filed and maintained only in the United States District Court for the District of Columbia." 42 U.S.C. §§ 247d-6d(d)(1), (e)(1). "Willful misconduct" is a defined term under the PREP Act. *Id.* § 247d-6d(c); *see id.* § 247d-6d(c)(1)(B) ("shall be construed as establishing a standard for liability that is more stringent than a standard of negligence in any form or recklessness"). Before bringing an action under § 247d-6d(d), a plaintiff first must exhaust the remedies available under § 247d-6e(a), the Covered Countermeasure Process Fund. *Id.* § 247d-6e(d)(1).

"The PREP Act, however, does not extinguish all claims that are not based on willful misconduct. The Act separately establishes a Covered Countermeasure Process Fund ('the Fund'), overseen by the Secretary, to compensate individuals for 'covered injuries directly

caused by the administration or use of a covered countermeasure.' *Id.* § 247d-6e(a). The statutory scheme therefore ensures that **covered persons who are merely negligent in the use of covered countermeasures are immune from suit** while enabling the individuals injured by such negligence to seek compensation through the Fund's administrative process." *Pratt v. JACC Healthcare Center of Norwich LLC*, No. 3:22-cv-566 (VAB), 2022 WL16855976, at *2 (D. Conn. Nov. 10, 2022) (bold added).

Lastly, the PREP Act includes a preemption provision, which, in relevant part, states that "no State or political subdivision of a State may establish, enforce, or continue in effect with respect to a covered countermeasure any provision of law or legal requirement that . . . is different from, or is in conflict with, any requirement applicable under this section . . . ." 42 U.S.C. § 247d-6d(b)(8)(A). The reach of the PREP Act's preemption provision is the same as its immunity provision. As the Second Circuit has explained, "nothing in the PREP Act suggests that Congress was attempting also to eliminate state-law causes of action for non-immunized claims." *Solomon*, 62 F.4th at 62.

Accordingly, the operative question under the PREP Act is whether or not a plaintiff's cause of action is subject to legal immunity under the Act. In the case at bar, the answer to this question is "yes."

## ARGUMENT

### 1. Dr. Kory is a "covered person" under the PREP Act.

As noted above, the PREP Act provides that "a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure . . . ." 42 U.S.C. § 247d-6d(a)(1). Thus, to be entitled

to the "broad immunity" under the PREP Act, *Solomon*, 62 F.4th at 58, Dr. Kory must be a "covered person" within the meaning of the statute. He is.

The PREP Act defines "covered person," in relevant part, to include "a qualified person who prescribed, administered, or dispensed such countermeasure." 42 U.S.C. § 247d-6d(i)(2)(B)(iv). A "qualfied person," in turn, is defined, in relevant part, to include "a licensed health professional or other individual who is authorized to prescribe, administer, or dispense such countermeaures under the law of the State in which the countermeasure was prescribed, administered, or dispensed." *Id.* § 6d(i)(8)(A).

Although Dr. Kory is not licensed to practice medicine in Connecticut, Compl. ¶ 21.b, at all times relevant to this case he was licensed and in good standing in Wisconsin and New York. *See* Kory Declaration ¶¶ 5-6. As such, he was authorized under Connecticut law to provide medical treatment to Mr. Waters in this case.

Specifically, Connecticut General Statute § 20-9 ("Who may practice medicine or surgery") provides that the general prohibition on practicing medicine in Connecticut without a license does not apply to:

> [a]ny physician or surgeon residing out of this state who holds a current license in good standing in another state and who is employed to come into this state to treat, operate or prescribe for any injury, deformity, ailment or disease from which the person who employed such physician, or the person on behalf of whom such physician is employed, is suffering at the time when such nonresident physician or surgeon is so employed, provided such physician or surgeon may practice in this state without a Connecticut license for a period not to exceed thirty consecutive days. C.G.S. § 20-9(b)(5).

Thus, because Dr. Kory was employed by Mr. Waters or his family to treat Mr. Waters for COVID-19, which Mr. Waters was suffering from at the time, Compl. ¶¶ 9-10, Dr. Kory was authorized to practice in Connecticut on a temporary basis and to "treat" and "prescribe" medicines to Mr. Waters for his COVID-19.

Accordingly, Dr. Kory was a "qualified person" and, therefore, a "covered person" under the PREP Act.

### 2. Dr. Kory prescribed "covered countermeasures" to Mr. Waters.

The immunity provided by the PREP Act "applies to any claim for loss that has a causal relationship with the administration to or use by an individual of a covered countermeasure." 42 U.S.C. § 247d-6d(a)(2)(B). In the case at bar, Plaintiff alleges that Mr. Waters was injured and ultimately died due to a perforated duodenal ulcer that was caused by the high dose corticosteroids prescribed by Dr. Kory to treat Mr. Waters for his COVID-19. *See* Compl. ¶¶ 19, 21.c; Physician Decl. at 3. The corticosteroids prescribed by Dr. Kory to treat Mr. Waters' COVID-19 – indeed, all of the medicines he prescribed to Mr. Waters – constituted "covered countermeasures" within the meaning of the PREP Act.

There is a common misconception that the term "covered countermeasures" under the PREP Act only applies to COVID-19 vaccines and other medicines specifically designed to treat COVID-19. Not so. As noted above, when the HHS Secretary issued his PREP Act declaration for COVID-19, he defined "covered countermeasures," in relevant part, as "**any antiviral, any other drug**, any biologic, any diagnostic, any other device, or any vaccine **used** to **treat**, diagnose, cure, prevent, or mitigate **COVID-19** . . . ." 85 Fed. Reg. at 15202 (Section VI) (bold added). As recognized by the Second Circuit in *Solomon v. St. Joseph Hospital*, "[e]ffective February 4, 2020, the HHS Secretary declared 'COVID-19 . . . a public health emergency' and defined 'covered countermeasures' as any 'antiviral, drug, biologic, diagnostic, device, or vaccine used to treat, diagnose, cure, prevent, or mitigate COVID-19.'" 62 F.4th at 58 (citing 85 Fed. Reg at 15198-01); *see also Hampton v. California*, 83 F.4th 754, 762-63 (9th Cir. 2023) ("The Secretary went on to define 'covered countermeasures' about as broadly as the Act permits, encompassing 'any antiviral, any other drug, any

biologic, any diagnostic, any other device, or any vaccine, used to treat, diagnose, cure, prevent, or mitigate COVID-19.'").

Thus, a "covered countermeasure" within the meaning of the PREP Act is <u>any</u> medicine <u>used</u> to treat, cure, prevent, or mitigate COVID-19.

In the case at bar, all of the medicines that Dr. Kory prescribed to Mr. Waters – ivermectin, prednisone, spironolactone, and dutasteride, Compl. ¶¶ 11, 14 – were used to treat, mitigate, and cure Mr. Waters' COVID-19. *See* Kory Declaration ¶ 11. Accordingly, they constitued "covered countermeasures" under the PREP Act.

### 3. Plaintiff alleges a causal relationship between Mr. Waters' claim for loss and his use of the covered countermeasures.

The immunity provided by the PREP Act "applies to any claim for loss that has a causal relationship with the administration to or use by an individual of a covered countermeasure." 42 U.S.C. § 247d-6d(a)(2)(B); *see also Hampton*, 83 F.4th at 764 ("At the very least, then, for PREP Act immunity to apply, the underlying use or administration of a covered countermeasure must have played some role in bringing about or contributing to the plaintiff's injury.") (footnote omitted). In the case at bar, Plaintiff alleges that Mr. Waters was injured and ultimately died due to a perforated duodenal ulcer that was caused by the high dose corticosteroids prescribed by Dr. Kory to treat Mr. Waters for his COVID-19. *See* Compl. ¶¶ 19, 21.c; Physician Decl. at 3. Plaintiff's expert declaration is explicit in alleging that "[b]y prescribing high dose corticosteroids to this elederly man without consideration of GI protection, Dr. Kory violated the standard of care to a reasonable degree of medical certainty, by causing a large duodenal ulcer which ultimately led to Mr. Waters' untimely death." Physician Decl. at 3.

Accordingly, Plaintiff's claim for loss has a causal relationship with the use by Mr. Waters of a covered countermeasure.

**4. Dr. Kory is entitled to PREP Act immunity "from suit and liability" for his treatment of Mr. Waters for COVID-19.**

To be entitled to PREP Act immunity for his treatment of Mr. Waters for COVID-19, (1) Dr. Kory must be a "covered person," (2) who prescribed a "covered countermeasure" to Mr. Waters, which (3) "has a causal relationship" with Plaintiff's claim for loss. *See* 42 U.S.C. §§ 247d-6d(a)(1), (2)(B). As demonstrated above, Defendant satisfies each required element for immunity under the statute. Consequently, Dr. Kory is entitled to immunity "from suit and liability" for his treatment of Mr. Waters, *id.* § 6d(a)(1), and Plaintiff's Complaint must be dismissed with prejudice.

**5. Plaintiff's CUTPA claim must be dismissed with prejudice because CUTPA does not apply to medical malpractice.**

In addition to a claim for negligence (Count I), Plaintiff asserts a claim under the Connecticut Unfair Trade Practices Act (CUTPA) (Count II). Plaintiff's CUTPA claim is based on the exact same operative facts as his negligence claim; accordingly, the CUTPA claim is barred by the PREP Act for the exact same reasons as the negligence claim.

Moreover, there is an independent reason to dismiss the CUTPA claim. It is well-established that a claim of "professional negligence – that is, malpractice – does not fall under CUTPA." *Haynes v. Yale-New Haven Hosp.*, 242 Conn. 17, 34, 699 A.2d 964, 972 (1997). As the Connecticut Supreme Court explained more than 25 years ago: "Although physicians and other health care providers are subject to CUTPA, only the entrepreneurial or commercial aspects of the profession are covered . . . ." *Id.* "[T]he touchstone for a legally sufficient CUTPA claim against a health care provider is an allegation that an entrepreneurial or business aspect of the provision of services is implicated, aside from medical competence . . . . Medical malpractice claims recast as CUTPA claims cannot form the basis for a CUTPA violation." *Id.* at 38, 974.

In the case at bar, Plaintiff's Complaint merely recasts his negligence claim as a CUTPA claim.  This is insufficient as a matter of law.

## CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss should be granted and Plaintiff's Complaint dismissed with prejudice.

Respectfully submitted,

**THE WARSHAWSKY LAW FIRM**

/s/ *Steven M. Warshawsky*
_____
Steven M. Warshawsky (*pro hac vice*)
118 North Bedford Road, Suite 100
Mount Kisco, NY 10549
T:  (914) 864-3353
E:  smw@warshawskylawfirm.com

**ATKINSON LAW, LLC**

/s/ *Cameron Atkinson*
_____
Cameron Atkinson (CT31219)
122 Litchfield Road, Suite 2
Harwinton, CT 06791
T:  (203) 677-0782
E:  catkinson@atkinsonlawfirm.com

*Attorneys for Defendant Pierre Kory, M.D.*

Attachments:   1.  42 U.S.C. § 247d-6d
                        2.  85 Fed. Reg. 15198 (Mar. 17, 2020)